UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Federal Trade Commission**, | SA-CV-99-1266 AHS (EEx) |
| Plaintiff, | **(Proposed)** |
| v. | **Supplemental Final Order to Modify Stipulated Final Judgment and Order Pursuant to Rule 60(b)** |
| **Data Medical Capital, Inc., et al.,** | |
| Defendants. | Judge Alicemarie H. Stotler |

Plaintiff Federal Trade Commission ("FTC" or the "Commission"), pursuant to Federal Rule of Civil Procedure 60(b), seeks to modify certain provisions of the Stipulated Final Judgment and Order for Permanent Injunction, Disgorgement and Monetary Relief Against Defendant Bryan D'Antonio a/k/a Brian D'Antonio and Data Medical Capital, Inc. also doing business as Datamed and Medco that this Court entered on July 13, 2001 ("Stipulated Final Order").

Having considered the arguments and evidence presented, the Court finds and orders:

**FINDINGS**

1.    This Court entered a Stipulated Final Order against Bryan D'Antonio ("D'Antonio") on July 13, 2001.

2.    D'Antonio received actual notice of the Stipulated Final Order.

3.    Section I.B. of the Stipulated Final Order prohibits D'Antonio and others who receive actual notice of the Stipulated Final Order and are in active concert or participation with him from engaging in telemarketing, or assisting others engaged in telemarketing.

4.    Section II of the Stipulated Final Order prohibits D'Antonio from misrepresenting, "in connection with the advertising, marketing, promoting, telemarketing, offering for sale, or sale of any good or service, . . . any fact material to a consumer's decision to buy or accept the good or service."

5.    On May 27, 2009, the Commission initiated contempt proceedings against D'Antonio and The Rodis Law Group, Inc., America's Law Group, and The Financial Group, Inc. dba Tax Relief ASAP (collectively, "Contempt Defendants").   The FTC sought contempt sanctions and, by a separate *ex parte* application concurrently filed to modify the Stipulated Final Order with a Supplemental Final Order.  The FTC alleged, among other things, that Contempt Defendants violated Sections I.B. and II of the Stipulated Final Order by engaging in telemarketing and by making material misrepresentations to consumers about purported foreclosure prevention and mortgage loan modification services.

6.    On May 27, 2009, the Court entered an *ex parte* Temporary Restraining Order against the Contempt Defendants, which, *inter alia*, appointed Robb Evans & Associates, LLC as Temporary Receiver over The Rodis Law Group, Inc., America's Law Group, and The Financial Group, Inc. dba Tax Relief ASAP (collectively, "Receivership Defendants") and froze the assets of the Contempt Defendants.  On June 22, 2009, the Court entered a Preliminary Injunction, which, *inter alia*, appointed Robb Evans & Associates, LLC as Receiver over the Receivership Defendants.

//

7.    The Court incorporates herein its findings in the contempt proceeding, including that:  (1) Contempt Defendants violated Section I.B. of the Stipulated Final Order by engaging in telemarketing of foreclosure prevention and mortgage loan modification services, through a program that generated telemarketing calls from consumers; and (2) Contempt Defendants violated Section II of the Stipulated Final Order by misrepresenting facts that were material to consumers' decisions to purchase foreclosure prevention and mortgage loan modification services.  The misrepresentations included, but were not limited to:

      a.    That Contempt Defendants had stopped, and were successful at stopping, foreclosures;

      b.    That Contempt Defendants negotiated mortgage loan modifications and re-wrote mortgage loan contracts, and that they routinely obtained mortgage loan modifications for consumers that included, *inter alia*, reduced principal balances, lower interest rates, and lower monthly payments; and

      c.    That numerous experienced attorneys would work on consumers' behalf and conduct forensic audits of consumers' mortgage loans, which they would use as leverage in their mortgage loan modification negotiations.

8.    D'Antonio's contumacious conduct constitutes changed circumstances pursuant to Fed R. Civ. P. 60(b) that require the Stipulated Final Order to be modified to achieve its purpose of protecting consumers.

9.    Entry of this Supplemental Final Order is in the public interest.

//

//

//

3

**DEFINITIONS**

For the purposes of this Order, the following definitions shall apply:

1.  "*Assisting others*" includes, but is not limited to, providing any of the following goods or services to another person:  (A) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (B) formulating or providing, or arranging for the formulation or provision of, any telephone sales script or any other marketing material, including but not limited to, the text of any Internet website, email, or other electronic communication; (C) providing names of, or assisting in the generation of, potential customers; (D) performing marketing services of any kind; or (E) acting or serving as an employee, owner, officer, director, manager, or principal of any entity.  **(Supercedes definition in Stipulated Final Order.)**

2.  "*Credit-related goods or services*" means any good, product, program, or service that is advertised, offered for sale, or sold to consumers as a method by which consumers may establish or obtain a credit device, including but not limited to credit or charge cards; or any extension, or modification, of credit, including, but not limited to, credit cards, loans, financing, or Mortgage loan modification or foreclosure relief service, or as a method to consolidate or liquidate debts; or any improvement in credit rating or credit score.

3.  "*Mortgage loan modification or foreclosure relief service*" means any good, service, plan, or program that is represented, expressly or by implication, to assist a consumer in any manner to: (A) stop, prevent, or postpone any home mortgage or deed of trust foreclosure sale; (B) obtain or arrange a modification of any term of a home loan, deed of trust, or mortgage; (C) obtain any forbearance from any mortgage loan holder or servicer; (D) exercise any right of reinstatement of any mortgage loan; (E) obtain, arrange, or attempt to obtain or arrange any extension of the period within which the owner of property sold at foreclosure may cure his or her default or reinstate his or her obligation;

4

(F) obtain any waiver of an acceleration clause contained in any promissory note or contract secured by a deed of trust or mortgage on a residence in foreclosure or contained in that deed of trust; (G) obtain a loan or advance of funds that is connected to the consumer's home ownership; (H) avoid or ameliorate the impairment of the consumer's credit record, credit history, or credit rating that is connected to the consumer's home ownership; (I) save the consumer's residence from foreclosure; (J) assist the consumer in obtaining proceeds from the foreclosure sale of the consumer's residence; (K) obtain or arrange a pre-foreclosure sale, short sale, or deed-in-lieu of foreclosure; (L) obtain or arrange a refinancing, recapitalization, or reinstatement of a home loan, deed of trust, or mortgage; (M) audit or examine a consumer's mortgage or home loan application; or (N) obtain, arrange, or attempt to obtain or arrange any extension of the period within which the renter of property sold at foreclosure may continue to occupy the property.  The foregoing shall include any manner of claimed assistance, including, but not limited to, debt, credit, budget, or financial counseling; receiving money for the purpose of distributing it to creditors; contacting creditors or servicers on behalf of the consumer; and giving advice of any kind with respect to filing for bankruptcy.

4.     "*Person*" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

5.     "*Receiver*" means Robb Evans & Associates, LLC.

6.     "*Servicer*" means any beneficiary, mortgagee, trustee, loan servicer, loan holder, or other entity that performs loan or credit account administration or processing services and/or its authorized agents.

7.     "*Order*" shall mean the provisions of the Stipulated Final Order and Supplemental Final Order as read together.

//

5

All of the definitions provided in the Stipulated Final Order also apply for the purposes of this Supplemental Final Order unless specifically modified herein.

## SUPPLEMENTAL FINAL ORDER

### I.

### EFFECT ON PRIOR COURT ORDERS

**IT IS HEREBY ORDERED** that the Stipulated Final Order shall remain in full force and effect.  Except as expressly provided herein, nothing contained in this Supplemental Final Order shall alter, modify, or limit in any way the terms and conditions of the Stipulated Final Order.

### II.

### BAN ON CREDIT RELATED GOODS OR SERVICES

**IT IS FURTHER ORDERED** that D'Antonio, whether acting directly or through any other person, is permanently restrained and enjoined from:

A.    Advertising, marketing, promoting, offering for sale, or selling any credit-related goods or services; or

B.    Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any credit-related goods or services.

### III.

### PROHIBITED REPRESENTATIONS RELATING TO ANY GOODS OR SERVICES

**(Supersedes Only that Portion of § II of the Stipulated Final Order from Page 7, Line 17 through Page 8, Line 2.  The Remainder of § II Shall Remain in Full Force and Effect)**

**IT IS FURTHER ORDERED** that D'Antonio and his agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or

6

through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale or sale of any good, service, plan, or program are hereby permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication, any material fact, including but not limited to:

A.	Any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including, but not limited to, the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

B.	The total costs to purchase, receive, or use, and the quantity of, the good or service;

C.	Any material restriction, limitation, or condition to purchase, receive, or use the good or service; and

D.	Any material aspect of the performance, efficacy, nature, or characteristics of the good or service.

## IV.

## COMPLIANCE MONITORING

**(Supersedes §§ XI and XII of the Stipulated Final Order)**

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Order:

A.	Within ten (10) days of receipt of written notice from a representative of the Commission, D'Antonio shall submit additional written reports, which are true and accurate and sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and provide entry during normal business hours to any business location in D'Antonio's possession or direct or indirect control to inspect the business operation;

B.	In addition, the Commission is authorized to use all other lawful means,

7

including but not limited to:

1. obtaining discovery from any person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, 45 and 69;

2. having its representatives pose as consumers and suppliers to Contempt Defendants, their employees, or any other entity managed or controlled in whole or in part by any Contempt Defendant, without the necessity of identification or prior notice; and

C. D'Antonio shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Order.  The person interviewed may have counsel present.

*Provided however*, that nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

**V.**

**COMPLIANCE REPORTING**

**(Supersedes § X of the Stipulated Final Order)**

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order may be monitored:

A. For a period of ten (10) years from the date of entry of this Supplemental Final Order,

1. D'Antonio shall notify the Commission of the following:

a. Any changes in his residence, mailing addresses, and telephone numbers, within ten (10) days of the date of such

8

change;

    b.    Any changes in his employment status (including self-employment), and any change in his ownership in any business entity within ten (10) days of the date of such change.  Such notice shall include the name and address of each business that D'Antonio is affiliated with, employed by, creates or forms, or performs services for; a detailed description of the nature of the business; and a detailed description of his duties and responsibilities in connection with the business or employment; and

    c.    Any changes in his name or use of any aliases or fictitious names within ten (10) days of the date of such change;

2.    D'Antonio shall notify the Commission of any changes in structure of any business entity that D'Antonio directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to: incorporation or other organization; a dissolution, assignment, sale, merger, or other action; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; or a change in the business name or address, at least thirty (30) days prior to such change, provided that, with respect to any such change in the business entity about which D'Antonio learns less than thirty (30) days prior to the date such action is to take place, he shall notify the Commission as soon as is practicable after obtaining such knowledge.

B.    One hundred eighty (180) days after the date of entry of this Supplemental Final Order and annually thereafter for a period of ten (10) years, D'Antonio shall provide a written report to the FTC, which is true and

9

accurate and sworn to under penalty of perjury, setting forth in detail the manner and form in which he has complied and is complying with this Order. This report shall include, but not be limited to:

1.     D'Antonio's then-current residence address, mailing addresses, and telephone numbers;

2.     D'Antonio's then-current employment status (including self-employment), including the name, addresses, and telephone numbers of each business that he is affiliated with, employed by, or performs services for; a detailed description of the nature of the business; and a detailed description of his duties and responsibilities in connection with the business or employment;

3.     A copy of each acknowledgment of receipt of this Order, obtained pursuant to the Section titled "Distribution of Order;" and

4.     Any other changes required to be reported under Subsection A of this Section.

C.     D'Antonio shall notify the Commission of the filing of a bankruptcy petition within fifteen (15) days of filing.

D.     For the purposes of this Order, D'Antonio shall, unless otherwise directed by the Commission's authorized representatives, send by overnight courier all reports and notifications required by this Order to the Commission, to the following address:

> Associate Director for Enforcement
>
> Federal Trade Commission
>
> 600 Pennsylvania Avenue, N.W., Room NJ-2122
>
> Washington, D.C. 20580
>
> RE: FTC v. Data Medical Capital, Inc. et al

Provided that, in lieu of overnight courier, D"Antonio may send such reports or notifications by first-class mail, but only if D'Antonio

10

contemporaneously sends an electronic version of such report or

notification to the Commission at: DEBrief@ftc.gov.

E.  For purposes of the compliance reporting and monitoring required by this

Order, the Commission is authorized to communicate directly with

D'Antonio.

## VI.

## RECORD KEEPING PROVISIONS

## (Supersedes § IX of the Stipulated Final Order)

**IT IS FURTHER ORDERED** that, for a period of thirteen (13) years
from the date of entry of this Supplemental Final Order, D'Antonio and any
business for which he is the majority owner or directly or indirectly controls, are
hereby restrained and enjoined from failing to create and retain the following
records:

A.  Accounting records that reflect the cost of goods or services sold, revenues

generated, and the disbursement of such revenues;

B.  Personnel records accurately reflecting:  the name, address, and telephone

number of each person employed in any capacity by such business,

including as an independent contractor; that person's job title or position;

the date upon which the person commenced work; and the date and reason

for the person's termination, if applicable;

C.  Customer files containing the names, addresses, phone numbers, dollar

amounts paid, quantity of items or services purchased, and description of

items or services purchased, to the extent such information is obtained in

the ordinary course of business;

D.  Complaints and refund requests, whether received directly or indirectly,

such as through a third party, and any responses to those complaints or

requests;

//

11

E.    Copies of all sales scripts, training materials, advertisements, or other marketing materials; and

F.    All records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this Order required by the Sections titled "Distribution of Order" and "Acknowledgment of Receipt of Order" and all reports submitted to the FTC pursuant to the Sections titled "Compliance Monitoring" and "Compliance Reporting."

## VII.

## DISTRIBUTION OF ORDER

### (Supersedes § VIII of the Stipulated Final Order)

**IT IS FURTHER ORDERED** that, for a period of ten (10) years from the date of entry of this Supplemental Final Order, D'Antonio shall deliver copies of the Order as directed below:

A.    For any business that D'Antonio controls, directly or indirectly, or in which D'Antonio has a majority ownership interest, he must deliver a copy of this Order to: (1) all principals, officers, directors, and managers of that business; (2) all employees, agents, and representatives of that business who engage in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting." For current personnel, delivery shall be within five (5) days of service of this Supplemental Final Order upon D'Antonio. For new personnel, delivery shall occur prior to them assuming their responsibilities. For any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure.

//

B.    For any business where D'Antonio is not a controlling person of the business but otherwise engages in conduct related to the subject matter of this Order, he must deliver a copy of this Order to all principals and managers of such business before engaging in such conduct.

C.    D'Antonio must secure a signed and dated statement acknowledging receipt of the Order, within thirty (30) days of delivery, from all persons receiving a copy of the Order pursuant to this Section.

## VIII.

## ACKNOWLEDGMENT OF RECEIPT

## OF SUPPLEMENTAL FINAL ORDER

### (Supersedes § XIII of the Stipulated Final Order)

**IT IS FURTHER ORDERED** that, D'Antonio, within five (5) business days of receipt of this Supplemental Final Order as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of this Supplemental Final Order.

## IX.

## EXTENSION OF TIME PERIODS

**IT IS FURTHER ORDERED** that the time periods in Sections V through VII, of this Supplemental Final Order shall be tolled during any period of time during which D'Antonio is incarcerated.

//
//
//
//
//
//
//
//

13

## X.

## CONTINUED JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

**IT IS SO ORDERED**, this _____ day of _____, 2009.

_____
United States District Judge

14